No. 121.—CORDY GOODSON *et al.* plaintiffs in error, *vs.* BRYANT COOLEY, defendant.

[1.] Under the Act of 1820, if not at Common Law, suits may be maintained *at Law* between partners.

[2.] A being the debtor of B stipulates with C to discharge the debt: *Held*, that B being no party to the contract, it does not change the relation of A to B—constituting A security only to the debt.

[3.] B being a mortgage debtor of A, agrees with C, upon sufficient consideration, namely: the transfer of the mortgaged property, to discharge the liability. C failing to comply, the mortgage is foreclosed and the property sold : *Held*, that no right of action accrues to C to recover back of B the amount paid by C on the debt, by way of damages.

Assumpsit, in Newton Superior Court. Tried before Judge STARKE, September Term, 1855.

This was an action brought by three of the Goodsons, to-wit: Cordy, Joseph and John B. against Bryant Cooley. The declaration stated that Cooley had bought from one King a stock of horses and vehicles, for which he gave his note for $3.000; that he engaged plaintiffs to keep a livery stable, on an agreement that if they would manage it and pay off the note held by said King; that said stock should belong to them; that they had gone on and paid $1.200 by their care and labor in said livery stable, and were going on to pay the remainder, when Cooley induced King to foreclose a mortgage he had given on the stock to secure said notes, and it was sold.

The plaintiffs claimed to recover this $1.200. On the trial, King testified that the agreement between Cooley and the Goodsons was, as stated by plaintiffs, except that when the notes should be paid off, the stock was to belong to them all in four equal shares. Other witnesses testified to having heard Cooley say that he had nothing to do with the stock; that it was for the Goodsons, whenever said notes were paid.

The defendant moved for a non-suit, and the Court granted it, on the ground that if Cooley was to have a share in the stock when paid for, then they were partners, and the action would not lie; and that if they were not partners, then Cooley would be considered, in Equity, as security for the Goodsons on said notes; and therefore, had a right to notify King to collect the same; and in the absence of evidence as to when the Goodsons were to pay said notes, it must be taken that they were bound to pay them when due; and if not paid it was their own fault.

To which judgment of non-suit plaintiffs except.

CLARK & LAMAR, for plaintiffs in error.

FLOYD, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

A non-suit was awarded by the Court in this case on three grounds:

[1.] Because the facts proven constituted a partnership between the plaintiffs and defendant; and consequently, an action at Law did not lie. 2. That if they did not, the defendant would be considered, in Equity, as the security of the plaintiff; and therefore, if King had not proceeded to foreclose the mortgage when directed by Cooley, Cooley would have been released from the debt; and lastly, that in the absence of any evidence, showing at what time the plaintiffs were to pay for the stock, the legal presumption was that it

was to be at the maturity of the note given by Cooley to King for the purchase money of the property bought by Cooley of King and sold to the plaintiffs and that if the Goodsons failed to discharge the debt, and thus lost the benefit of their contract, it was their own fault, and they had no right to recover of the defendant. We think the first ground upon which the judgment of non-suit was put of more than doubtful propriety.

[2.] We are clear that the second, as to the relation of security existing between the parties, so as to affect King's rights, without his being a party to the agreement, was wrong.

[3.] And equally well satisfied that the plaintiffs were not entitled to maintain this action against the defendant; knowing of the mortgage, the Goodsons stipulated to pay the debt. If they neglected or refused to do so, and the property has been sold under the foreclosure, whom have they to blame but themselves?

It is argued, and the suit for damages is brought upon this idea, that the plaintiffs have paid twelve hundred dollars of the defendant's debt. True, but it was out of the profits of the property, after making a support for themselves in the meantime. Suppose the whole of the horses, or a large portion of them, had perished with distemper or by some other casualty! It is in evidence that this property was the only means by which they could fulfil their undertaking! Inevitable loss would have resulted to Cooley. As it was, it was becoming daily more valueless. The risks run by Cooley constituted a very sufficient consideration, in Equity as well as at Law, for the agreement, on the Goodsons part, to settle King's claim, as well as for the money actually paid by them out of his property.

It may have been morally wrong in Cooley to instigate King to coerce the collection of his debt; still, neither he nor King did any more than they had a right to do. The Goodsons ha' stipulated to pay the debt at maturity, and could not complain at being compelled to do so. Cooley, looking to the

depreciation of the horses and carriages, might have been influenced by a laudable desire only to save himself.